IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO. 5:11-CV-363-BO

| | |
|---|---|
| LINDA SATTERWHITE, )<br>      Plaintiff, )<br>)<br>v. )<br>)<br>WAL-MART STORES EAST, L.P., )<br>      Defendant. ) | O R D E R |

This matter is before the Court on Defendant Wal-Mart Stores East ("Wal-Mart")'s Motion to Dismiss [DE 11]. Ms. Satterwhite brought this action against Wal-Mart, alleging discrimination under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e-200e-17 ("Title VII"); the Americans with Disabilities Act, 42 U.S.C. §§ 12101-12117 ("ADA"); the Age Discrimination in Employment Act, 29 U.S.C. §§ 621-634 ("ADEA"); the Family and Medical Leave Act, 29 U.S.C. §§ 2601-2654 ("FMLA"); the North Carolina Retaliatory Employment Discrimination Act, N.C. Gen. Stat. § 95-241 ("REDA"); and North Carolina tort law.

Wal-Mart seeks to dismiss Ms. Satterwhite's claims under (1) the ADEA, (2) the ADA, (3) North Carolina REDA, (4) North Carolina public policy, (5) North Carolina intentional infliction of emotional distress, and (6) North Carolina negligent infliction of emotional distress. Plaintiff Linda Satterwhite responded on September 30, 2011 [DE 21] and Wal-Mart replied on October 28, 2011 [DE 24]. The Motion is ripe for adjudication. For the following reasons, Wal-Mart's Motion is GRANTED and Ms. Satterwhite's claims under the ADEA, North Carolina REDA, North Carolina public policy, North Carolina intentional infliction of emotional distress,

and North Carolina negligent infliction of emotional distress, and her ADA claims alleging harassment, hostile work environment, failure to accommodate, and retaliation are DISMISSED. Ms. Satterwhite's claims under the FMLA and her discrete discrimination claims under the ADA are permitted to proceed.

## BACKGROUND

Ms. Satterwhite is a former Assistant Manager who worked for Wal-Mart for twelve years and was over 40 years old at the time of her termination. She alleges that she became a victim of age discrimination and harassment in October and November of 2009, when her immediate supervisor, Store Manager Gary Stewart, told her that, because of her age: "[Ms. Satterwhite] didn't have a home [at Wal-Mart]," "[Wal-Mart] can terminate [Ms. Satterwhite] at any time," and that "while [Ms. Satterwhite] is on vacation, [Ms. Satterwhite] needs to decide whether or not [she] is going to step down or seek other avenues with [Wal-Mart]."

Ms. Satterwhite complained about these comments to Market Human Resources Manager Yolanda Pou and Market Manager Chris Welborn in November 2009. She also contested her receipt of two Coachings (warnings issued through Wal-Mart's Coaching for Improvement disciplinary policy), claiming that "similarly situated Assistant Managers, under the age of 40 years, had not received similar disciplinary action for similar infractions." She does not identify any similarly-situated Assistant Managers or specify the nature of these disciplines.

In December 2009, Ms. Satterwhite developed a staph infection in her finger that would not heal due to her diabetes. Ms. Satterwhite informed Wal-Mart of this condition in early December 2009 and of her physician's recommendation that she not return to work in order to prevent further infection. As a result of this incident, Ms. Satterwhite filed an FMLA leave request with Wal-Mart, which was denied. Ms. Satterwhite was absent from work on December

2, 6-9, 13-15, 19-21, 24, and 26-27. Due to her "excessive absences," Ms. Satterwhite was terminated on January 28, 2010.

On May 4, 2010, Ms. Satterwhite filed an EEOC charge alleging discrimination on the basis of her disability in violation of FMLA and the ADA. She filed an additional EEOC charge on November 29, 2010, alleging the same disability claims and incorporating additional claims based on her age and relating to the same time period.

## DISCUSSION

### Standards of Review

Federal Rule of Civil Procedure 12(b)(1)

As a threshold matter, a court must determine that it has jurisdiction before it can proceed to consider a matter on its merits. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998). The plaintiff bears the burden of proving that subject matter jurisdiction exists. *Hawes v. United States*, 409 F.3d 213, 216 (4th Cir. 2005). "When a defendant challenges subject matter jurisdiction pursuant to Rule 12(b)(1), the district court is to regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceedings to one for summary judgment." *Evans v. B.F. Perkins, Co.*, 166 F.3d 642, 647 (4th Cir. 1999) (internal quotation marks omitted).

Federal Rule of Civil Procedure 12(b)(6)

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) will succeed if a plaintiff fails to establish a "plausible" claim for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009). In analyzing a motion to dismiss, the complaint is construed in the light most favorable to the plaintiff and its allegations are taken as true. *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).

## I. ADEA Claims

Before a plaintiff can file a lawsuit in federal court alleging discrimination under the ADEA, she must first timely exhaust her administrative remedies by filing a charge with the EEOC within 180 days of the alleged adverse action. 29 U.S.C. § 626(d); 42 U.S.C. § 12117(a). The scope of an EEOC charge limits the scope of any subsequent litigation, with any claims that exceed the scope of the EEOC charge being procedurally barred. *Chacko v. Patuxent Inst.*, 429 F.3d 505, 509 (4th Cir. 2005). "Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit." *Jones v. Calvert Group, Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009). Where a plaintiff has filed an EEOC charge and alleges discrimination based on one protected category, but neither checks the box to allege discrimination on another protected category nor includes any discussion of the other category in the charge narrative, the plaintiff has failed to bring the second claim before the EEOC. *See, e.g., Evans v. Techs. Apps. & Serv. Co.*, 80 F.3d 954, 963 (4th Cir. 1996). Claims not brought before the EEOC are unexhausted, depriving the court of subject-matter jurisdiction over them. *See Calvert Group*, 551 F.3d at 300.

Ms. Satterwhite did not file a timely EEOC charge alleging age-based discrimination. Her timely-filed charge alleged only disability-based discrimination, describing her allegations under the FMLA and the ADA. Ms. Satterwhite did attempt to amend her charge on November 29, 2010, to include a claim of age discrimination.[1] This amendment, however, cannot relate back to

---

[1] As Wal-Mart specifically relies on the EEOC charge in moving to dismiss, the Court may review the entire EEOC charge without converting this motion to one for summary judgment under Federal Rule of Civil Procedure 56. *See, e.g., Whittington v. N.C. Dep't of Juvenile Justice & Delinquency Prevention*, No. 1:05CV348, 2006 WL 2862278, at *7 (W.D.N.C. Apr. 7, 2006).

her prior charge because it did not relate to the same allegations. Nor can this new charge stand on its own, as it concerned events occurring well outside of the 180-day time limit. *See, e.g., Evans*, 80 F.3d at 963-64. Because Ms. Satterwhite has failed to exhaust her administrative remedies as to these claims, they must be dismissed for lack of subject-matter jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1).

## II. REDA Retaliation Claims

Ms. Satterwhite claims that Wal-Mart willfully refused to rescind her termination and reinstate or rehire her because she initiated an inquiry and asserted her rights under North Carolina's Equal Employment Practices Act, N.C. Gen. Stat. § 143-422.1. In order to bring a civil complaint under REDA, a plaintiff must first file a complaint with the North Carolina Department of Labor within 180 days of the alleged violation and receive a right-to-sue-letter. N.C. Gen. Stat. § 95-242; *Brackett v. SGL Carbon Corp.*, 580 S.E.2d 757, 760 (2003). Here, Ms. Satterwhite has not alleged that she ever filed a complaint with the North Carolina Department of Labor. Nor has she refuted Wal-Mart's contention that she is barred from pursuing claims under REDA as a result of this failure. Ms. Satterwhite has failed to exhaust her administrative remedies and her REDA claims must be dismissed for lack of subject-matter jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1).

## III. Wrongful Discharge in Violation of Public Policy

In her complaint, Ms. Satterwhite alleges that Wal-Mart violated the Employment Security Act and the North Carolina Equal Employment Practices Act, § 143-422 and N.C. Gen. Stat. § 96-2 because its actions were contrary to the "North Carolina public policy against involuntary unemployment as a result of an employer's unlawful conduct and the public policy favoring stability and economic security through regular employment" [DE 1 at 25]. Specifically, she cites

the fact that Wal-Mart terminated her employment and did not reinstate her because she was "taking leave to care for her own serious health condition" [DE 1 at 24-25].

North Carolina is an at-will employment state, but it has recognized narrow exceptions to the presumption that an employment relationship is terminable at the will of either party. *See Hogan v. Forsyth Country Club Co.*, 340 S.E.2d 116, 125-26 (N.C. Ct. App. 1986). For example, if an employee has alleged that she was discharged in violation of the public policy of the state, such discharge is actionable. *See id.*; *Coman v. Thomas Mfg. Co.*, 381 S.E.2d 445 (1989). Importantly, this cause of action is strictly limited to wrongful discharge and does not allow recovery under a theory of wrongful failure to rehire or to reinstate an employee. *See Hughes v. Bledsoe*, 48 F.3d 1376, 1383-84 (4th Cir. 1995).

In order to state a cognizable claim for wrongful discharge in violation of North Carolina public policy, the plaintiff must allege (1) that her employer actually discharged her; and (2) that the discharge violated a specific North Carolina public policy or that the defendant encouraged the plaintiff to violate a law that might result in potential harm to the public. *Gillis v. Montgomery Cnty. Sheriff's Dep't*, 663 S.E.2d 447, 449 (N.C. Ct. App. 2008). The North Carolina state courts have allowed this area of the law to "mature slowly" and only limited claims have been permitted to serve as predicate violations of public policy. To date, FMLA violations like the one alleged by Ms. Satterwhite have not been held to be within the scope of the public policy exception. *Baucom v. Cabarrus Eye Ctr.*, No. 1:06CV00209, 2007 WL 1074663, at *7 (M.D.N.C. Apr. 4, 2007) (holding that "without express guidance from the North Carolina courts or legislature, the court will not expand the public policy exception to the at-will employment doctrine to cover FMLA violations").

## IV. Disability Harassment, Retaliation, and Failure to Accommodate Under the ADA

As noted above, Ms. Satterwhite is limited to those discrimination claims which were properly encompassed within her timely-filed EEOC charge. *Calvert Group*, 551 F.3d at 300. A claim for retaliation, for example, is not automatically encompassed in the scope of an EEOC charge which alleges "disability discrimination." Ms. Satterwhite's timely-filed EEOC charge was strictly limited to her claim that Wal-Mart discriminated against her because of her disability when it terminated her employment. She did not check the box for "retaliation," did not mention "retaliation," "harassment," "hostile work environment," or other similar terms in her charge narrative. Neither retaliation nor broader patterns of misconduct, such as harassment and hostile work environment cannot be inferred from individual allegations of discrimination. *Miles v. Dell, Inc.*, 429 F.3d 480, 492 (4th Cir. 2005) (holding that retaliation is not fairly encompassed in a discrimination charge when the plaintiff "did not check the retaliation box on her charge form, and the narrative explaining her charge made no mention of retaliation"); *Chacko*, 429 F.3d at 509 (noting that "the allegation of a discrete act or acts in an administrative charge is insufficient when the plaintiff subsequently alleges a broader pattern of misconduct").

Title VII's exhaustion requirement is not employed as a draconian formality, rather it exists to serve the important goals of notice and conciliation, allowing an employer to have an opportunity to voluntarily and independently investigate and resolve the alleged discriminatory actions. *Id.* at 510. The exhaustion requirement also facilitates agency-monitored settlement through the EEOC. *Id.*

Ms. Satterwhite did not include the claims of retaliation, harassment, or failure to accommodate in her timely-filed EEOC charge. Nor did she properly amend her charge to incorporate these allegations. Because her claims of harassment, retaliation, and failure to

accommodate exceed the scope of her EEOC charge, they must be dismissed.

## V. Intentional Infliction of Emotional Distress

To state a plausible claim for intentional infliction of emotional distress, a plaintiff must show (1) extreme and outrageous conduct by the defendant (2) which was intended to and does in fact (3) cause severe emotional distress. *Waddle v. Sparks*, 414 S.E.2d 22, 27 (N.C. 1992).

Conduct is extreme and outrageous if it is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Smith-Price v. Charter Behavioral Health Sys.*, 595 S.E.2d 778, 782 (N.C. Ct. App. 2004). Ms. Satterwhite alleges that her Store Manager told her that, because of her age, she didn't "have a home" at Wal-Mart, Wal-Mart could terminate her at any time, and she should decide whether she would step down or seek other avenues with Wal-Mart [DE 1 at 6]. She also alleges that she received two disciplinary "Coachings" that she believes were issued in a discriminatory fashion, based on her age [DE 1 at 7]. She cites to the denial of her FMLA leave request and her subsequent termination for "excessive absences" as additional extreme and outrageous behavior that caused her severe emotional distress [DE 1 at 13]. However, North Carolina courts have been "extremely reluctant to find actionable IIED claims in the employment context." *Efird v. Riley*, 342 F. Supp. 2d 413, 427 (M.D.N.C. 2004). For example, the North Carolina Court of Appeals did not find conduct "extreme and outrageous" where the plaintiff's manager refused her request for a leave of absence due to her pregnancy, directed her to carry heavy objects weighing more than ten pounds, cursed at her, and refused her request to leave work to go to the hospital. *Hogan*, 340 S.E.2d at 123. Ms. Satterwhite incorporated her factual allegations by reference in her claim for intentional infliction of emotional distress, but she has failed to connect those facts to her allegation that Wal-Mart

engaged in the type of extreme and outrageous behavior that North Carolina courts are prepared to recognize. Therefore, her conclusory statements are insufficient on this element to survive Wal-Mart's motion to dismiss.

Furthermore, Ms. Satterwhite has not made a plausible claim that her emotional distress was severe. To show severe emotional distress, a plaintiff must "do more than simply state that he has suffered severe emotional distress; there must be evidence that he has suffered from an emotional or mental disorder, such as, for example, neurosis, psychosis, chronic depression, phobia, or any other type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so." *May v. City of Durham*, 525 S.E.2d 223, 230 (N.C. Ct. App. 2000) (internal quotations omitted). Although an actual diagnosis by medical professionals is not always required or necessary, *Soderlund v. Kuch*, 546 S.E.2d 632, 639 (N.C. Ct. App. 2001), mere temporary fright, disappointment, or regret will not suffice to satisfy the element of severe emotional distress. *See Estate of Hendrickson ex rel. Hendrickson v. Genesis Health Venture, Inc.*, 565 S.E.2d 254, 265 (N.C. Ct. App. 2002). Ms. Satterwhite has not alleged even these temporary reactions–she has simply concluded that she "did in fact...suffer severe emotional distress" [DE 1 at 28]. That bare conclusion is insufficient to survive Wal-Mart's motion to dismiss this claim.

As Ms. Satterwhite has failed to allege a plausible claim for intentional infliction of emotional distress, this claim is dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

### VI. Negligent Infliction of Emotional Distress

To state a claim for negligent infliction of emotional distress, a plaintiff must allege that (1) the defendant was negligent; (2) it was foreseeable to the defendant that his negligence would cause the plaintiff severe emotional distress; and (3) the conduct, in fact, caused severe emotional

distress. *Guthrie v. Conroy*, 567 S.E.2d 403, 410 (N.C. Ct. App. 2002).

As noted above, Ms. Satterwhite has failed to sufficiently plead that she has suffered from severe emotional distress. As this failure defeats her claim for negligent infliction of emotional distress, this claim must also be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).[2]

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss [DE 11] is GRANTED. Ms. Satterwhite's claims under the ADEA, North Carolina REDA, North Carolina public policy, North Carolina intentional infliction of emotional distress, North Carolina negligent infliction of emotional distress, and her ADA claims alleging harassment, hostile work environment, failure to accommodate, and retaliation are DISMISSED. Ms. Satterwhite's claims under the FMLA and her discrete discrimination claims under the ADA are permitted to proceed.

SO ORDERED. This 26 day of January, 2012.

*Terrence W. Boyle*
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE

---

[2] It is important to note that Ms. Satterwhite relies entirely on intentional acts, such as unlawful denial of her leave of absence, termination, and refusal to rehire. Intentional conduct, by definition, cannot satisfy the negligence element of this North Carolina tort. *See Sabrowski v. Albani-Bayeux, Inc.*, 124 F. App'x 159 (4th Cir. 2005); *see also Mitchell v. Lydall, Inc.*, 16 F.3d 410, at *3 (4th Cir. 1994).